## STOCKTON *against* WILSON.

An executor *de son tort* is liable to the action of the lawful executor or administrator, or to that of a creditor.

If there be a lawful executor, he and an executor *de son tort* may be joined in an action, by a creditor, or sued severally.

An executor *de son tort* may be sued and treated by the creditor as if he were the rightful executor, and he should be thus styled in the writ and thus declared against.

An executor *de son tort* may protect himself as the rightful executor, by a proper plea; when he will be answerable only to those who are entitled to the assetts; and to the extent only as they have come to his hands.

An assignment of personal property, which is tainted with either moral or legal fraud, does not pass the property, but it remains in the debtor. Thus, if A receives goods from B for the purpose of defrauding creditors, and B afterwards dies, A may be charged in an action as executor *de son tort* of B, by any one of his creditors, to the amount of the value of the goods, or his *pro rata* share of them.

Error to the Common Pleas of *Fayette* county.

To June term, 1824, *Nixon Wilson* obtained a judgment against *James Shriver* for $1,024, which remained unsatisfied until after the death of *Shriver*, when the plaintiff issued a *scire facias quare executio non* against *Lucius W. Stockton*, executor of *James Shriver*, deceased. The writ was in the usual form. The defendant appeared and plead "*ne unques executor:*" the plaintiff replied "that the defendant, after the death of *James Shriver*, intermeddled with and administered the goods of the deceased, and thereby became *executor de son tort.*" There was no rejoinder to this replication, but "issue and rule for trial" was entered on the docket. Verdict for plaintiff for $330.

In answer to several points put by defendant's counsel, the court below, (*Baird*, president,) instructed the jury,

1. "That if they believe that the defendant took and used as his own any property of *James Shriver*, after his death, he may be liable, and is chargeable as executor in his own wrong; we cannot think, however, that in this country, he must be charged to the amount of the whole debt. The presumption should be against him, as to the extent and value of the property; but to say that a

man who, perhaps inadvertently, takes possession of goods of a deceased person, to the value of ten dollars, shall be liable for a debt of ten thousand dollars, is to my mind too monstrous to be maintained. He ought to be responsible fully to the value of what came to his hands, and no more."

2. "That if the defendant after the death of *James Shriver*, having so taken the property, did deliver it over or dispose of it to others, who had not administered, and who had no legal authority to demand or receive the same, he may also be chargeable as executor in his own wrong."

3. "If *L. W. Stockton* had obtained the possession of this property from *Shriver*, in his life-time, under colorable and fair pretence of title, although defective in point of law, he will not be liable in this action; but if the transaction was fraudulent, and intended merely to cover the goods from *Shriver's* creditors, it would be void; and the defendant taking the property and holding it, would be liable as an executor in his own wrong. Fraud however is not to be presumed."

To this charge exception was taken, which was here argued by *Austin* and *W. Wilkins* for plaintiff in error. Who contended, that if the goods came into the possession of the defendant, during the life-time of *Shriver*, and by his consent, this action could not be maintained. That even if the goods came to the possession of the defendant illegally, that he could not be charged with them in this form of action; and that there could be no recovery of them but by a rightful administrator, *Lee* v. *Wright*, 1 *Rawle*, 149. If the goods do belong to the estate of *Shriver*, is the plaintiff in this suit entitled to the proceeds of them, or should they go to all the creditors of equal degree *pro rata?*

*Dawson* for defendant in error, whom the court declined to hear.

The opinion of the court was delivered by

ROGERS, J.—An executor *de son tort* is liable to the action of the lawful executor or administrator or to that of a *creditor.* If there be a lawful executor, they may be joined in an action by a creditor, or sued severally. The executor *de son tort* is liable only to the amount of the assets which come to his hand. In general he may be treated by the creditor, as if he were the rightful executor, and this is the mode of declaring against him, as well in the case of a *scire facias* on a judgment, as in an original action. If he expose himself to any inconvenience, in consequence of intermeddling with the estate of another, without rightful authority, he has no person to blame for it but himself. He may, however, protect himself as the rightful executor, by a proper plea, when he will be answerable only to those who are entitled to the

(Stockton *v.* Wilson.)

assets, and to the extent only, as they have come to his hands.  *Toller's Law of Executors.*

This is admitted to be the law of England, and no satisfactory reason has been given, nor has any authority been produced, which shows that the law either is, or ought to be, different in *Pennsylvania.*  It is said that letters of administration should be taken out by the creditor before suit; but why should the creditor be exposed to this trouble and expense, against a person who has, without right, intermeddled with the estate?

The case of *Lee* v. *Wright*, 1 *Rawle*, 150, bears but little analogy to the present.  In *Lee* v. *Wright* the court decided, that when a person dies intestate, leaving a debt or debts unpaid, the children of such intestate cannot maintain a suit for any part of his estate, or the proceeds thereof, against one having the property of such intestate, or holding it as their trustee; but administration must be taken out, and the debts first paid.    And that if a person intermeddle with the goods of an intestate, or the proceeds thereof, and act as executor *de-son tort*, no administration being taken out, no trust can be raised in favor of children, as to such property, or the proceeds thereof, or any part of the same, so as to enable them to sue for such property, while the creditors of the estate remain unpaid.    The distinction is taken between a creditor and the children. *Justice Tod*, in delivering the opinion of the court, says: That in nineteen cases out of twenty, a creditor will very wisely prefer to lose his debt rather than take in hand to administer on the estate of a stranger.    And as to there being no danger of mischief to arise from want of a legal administrator, because whoever intermeddles, is answerable to creditors, as executor *de son tort*, it may be observed, that such remedy must always be doubtful and contentious.

The court charged the jury, that if *Stockton* had obtained possession of the property from *Shriver*, by delivery in his life time, under colorable and fair pretence of title, although defective in point of law, he will not be liable in this action.    But if the transaction was fraudulent, and intended merely to cover the same from *Shriver's* creditors, it will be void, and the defendant, taking the property and holding it, might be liable as executor in his own wrong. Of this the plaintiff in error complains; but in this we perceive no error.    When the assignment is tainted, with either moral or legal fraud, the property does not pass, but remains in the debtor, as was decided in *Lecky* v. *M'Clurg*,* a case not yet reported.    It still remains the property of the assignor, which the assignee has no power to appropriate to his own use, without subjecting himself to the hazard of an action, as executor in his own wrong.    The injury is precisely the same to the creditor, whether the property was delivered in the life-time of the deceased, if done fraudulently, or was taken by the defendant, after his death; nor does it strike

' Ante page, 83.

(Stockton *v.* Wilson.)

me, that the defendant can better his situation, by being guilty of fraud, in holding goods by a conveyance from the deceased. The injury consists in his appropriating property to his own use, in which he has no title, or pretence, or colorable title. And in this situation is *Stockton* placed, by the verdict of the jury. He has intermeddled with property belonging to the estate of the deceased; and as he would have had to account for it, as part of the assets, if he had been rightful executor, so he renders himself liable to suit as executor *de son tort*, either by the rightful administrator, or a creditor. The policy of the several states has varied in regard to an executor *de son tort*. In *Pennsylvania*, as in *South Carolina*, he is considered as a trespasser, and is chargeable as far as assets come to his hands, and is in every respect liable as an executor in his own wrong at common law. It will be seen, that we differ from the court, in *Green v. Dewit*, 1 *Rut. R.* 183, where it was held, that the intermeddling with goods, which are held by a conveyance from the deceased, although it be fraudulent, will not make an executor in his own wrong. We conceive this decision to be a departure from the principles of the common law, and of no binding authority in this state.

Judgment affirmed.